UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------x

GARY D. GOTLIN, et al.,

                            Plaintiffs,

            -against-                                        MEMORANDUM AND ORDER
                                                             04-cv-3736 (ILG)

GILBERT S. LEDERMAN, M.D., et al.,

                            Defendants.

----------------------------------------------------x

GLASSER, United States District Judge:

            This action is brought on behalf of Italian nationals, all but one of whom are now

deceased due to their infliction with various types of cancer, against the physicians who

treated them and their employers in the United States.  Plaintiffs and their

representatives allege that defendants unlawfully induced them through

misrepresentations to undergo a radiation procedure developed by defendants and that

they forewent other treatment options as a result.  Pending before the Court is the

motion of defendants[1] to dismiss the complaint for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss certain claims for failure to state a

cause of action upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

Additionally, defendants move to strike allegations in the complaint pursuant to Fed. R.

Civ. P. 12(f).

---

[1]  Unless otherwise noted, all defendants move to dismiss the complaint, except Salvatore Conte
and Annamaria Persico who were voluntarily dismissed from this action.

## **FACTS**

The following facts taken from plaintiffs' complaint are assumed to be true for purposes of this motion.  The estates of the deceased plaintiffs are represented by Gary D. Gotlin, the New York State Richmond County Public Administrator.  Compl. ¶ 2. Plaintiffs sue the hospitals where they were treated, Staten Island University Hospital ("SIUH"), North Shore-Long Island Jewish Healthcare, Inc. ("North Shore LIJ"), and North Shore-Long Island Jewish Health System, Inc. ("North Shore Health System"),[2] and various individuals who are the administrators of those hospitals.  Additionally, they sue the individuals who provided medical treatment to plaintiffs, Gilbert S. Lederman, M.D. ("Lederman"), Philip Jay Silverman, M.D. ("Silverman"), Irina Grosman, M.D. ("Grosman") and Salvatore Conte.  Id. ¶¶ 5-9.  Plaintiffs also sue Joseph Conte, Maria Gelmi-Nourbaha, and Annamaria Persico.  Id. ¶¶ 8, 10, 11.  Each of those individual defendants is alleged to be "an employee, servant, agent, representative partner and/or joint venturer and/or co-conspirator of defendants" hospitals.  See id.

Plaintiffs allege that in late 2001 or early 2002, defendants created an International Patient Program through which they marketed the Fractionated Stereotactic Radiosurgery ("FSR") cancer treatment method to Europeans and, in particular, Italian nationals.  Id. ¶ 31.  FSR involves "precision radiation using multiple, finely contoured beams from many different angles directed at the cancer, minimizing radiation to normal healthy tissue.  A non-invasive stereotactic frame maintains the body in a stable, reproducible position.  A stereotactic body frame secures this position

---

[2]  SIUH is alleged to be a "wholly owned subsidiary of, or joint venture with" North Shore LIJ. Compl. ¶ 12.  North Shore LIJ owns or operates SIUH.  Id. ¶ 13.  North Shore Health System owns or operates or was a joint venturer with SIUH and North Shore LIJ.  Id. ¶ 14.

which is painlessly and non-invasively custom-molded about the body." Id. ¶ 32.
Plaintiffs allege that defendant physicians and hospitals treated them and hundreds of
Italian nationals using this method . Id. ¶ 33. The FSR method was discontinued in late
2003 or early 2004.

Defendants marketed FSR to plaintiffs and the public at large in various ways,
including literature, television, radio, in-person seminars and the Internet. Id. ¶ 36.
Plaintiffs allege that those advertisements contained "misleading, fraudulent, deceitful,
and shocking claims, statements, and information." Id. ¶ 40. For example, the
"Fractionated Stereotactic Body Radiosurgery" marketing booklet stated, "the vast
majority of cancer treatments at [SIUH] with Body Radiosurgery – 90 percent – are
successful in the targeted area." The booklet also declared success rates for particular
cancers such as primary liver cancer and lung carcinomas. Id. ¶ 40. In addition to
indicating inaccurate and misleading success rates, literature that defendants
disseminated to plaintiffs represented that SIUH had performed "one hundred thousand
radiosurgeries!" and its "group of expert physicians has the greatest experience
worldwide." Id. ¶ 41(a), (b). Defendants represented FSR therapy as effective in cases
"when normal radiation has not been successful." Id. ¶ 41(d). Moreover, the literature
stated that the FSR had minimal side effects. Id. ¶ 42. These written materials were
translated into Italian and disseminated to plaintiffs through the mail and electronically.
Id. ¶ 43.

In addition to literature, defendants created video advertisements of their
product that also contained false and misleading statements about the success rate of
FSR. In one video, Lederman, the Director of Radiation Oncology for defendant

hospitals, stated, "Many people call [FSR] a treat, not a treatment because of the effectiveness and the lack of toxicity in general." Id. ¶ 46. Defendants issued similar messages about the treatment in Italian television broadcasts and on Internet web sites. Id. ¶¶ 50-54. Plaintiffs allege that they relied on these representations and were induced to seek treatment at defendant hospitals. Id. ¶¶ 56-59.

Defendants also organized conferences throughout Italy to market the treatment, which the plaintiffs attended. Defendants Lederman, Salvatore Conte, and Gelmi-Nourbaha spoke at the conferences. At those events and elsewhere, Salvatore Conte, who worked at a Naples, Italy office established by defendants, falsely represented himself as a medical doctor and oncologist. Id. ¶¶ 66, 69, 78. Plaintiffs allege that defendants knew or should have known that Conte was neither a medical doctor nor an oncologist. Id. ¶ 70. Moreover, at the conferences Lederman examined medical imaging films of patients in attendance and told them and their families defendants could cure them. Id. ¶ 71. Thereafter, defendants mailed letters from the United States to plaintiffs indicating that they were "accepted" for treatment by defendants and contacted them in Italy by phone with instructions about obtaining treatment. Id. ¶ 72.

Plaintiffs allege they relied on these representations to their detriment and that defendants "preyed upon the plaintiffs' fears and hopes at their most vulnerable time, when stricken with cancer." Id. ¶ 81. Plaintiffs were deceived into visiting the United States for FSR treatment based on promises that the procedure would help them. Such representations deprived plaintiffs of the opportunity to seek other necessary care and the FSR treatment caused plaintiffs pain and worsened their medical conditions. Id. ¶ 179. Most died shortly after receiving the treatment in a matter of weeks or months. Id.

¶ 85.

On August 27, 2004, plaintiffs and their representatives filed a complaint alleging violation of New York Business Law §§ 349 and 350; common law fraud; unjust enrichment; hospital and medical negligence; negligent misrepresentation; breach of warranty; medical malpractice; violation of New York State Public Health Law § 2805-d; wrongful death; loss of consortium; violation of 15 U.S.C. § 1125, the Lanham Act; and violation of 18 U.S.C. § 1961 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"). They allege that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332. Moreover, plaintiffs assert that this Court has supplemental jurisdiction over their state law claims under 28 U.S.C. § 1367.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and to dismiss certain claims for failure to state a cause of action upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Additionally, defendants move to strike allegations in the complaint pursuant to Fed. R. Civ. P. 12(f).

## DISCUSSION

When deciding a motion to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6), a court takes the facts as alleged in the complaint to be true, and must draw all reasonable inferences from those facts in favor of the plaintiff. See Ortiz v. Cornetta, 867 F.2d 146, 149 (2d Cir. 1989). "[M]otions to dismiss for [lack of] subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to state a claim under Rule 12(b)(6)." Walker v. New York, 345 F. Supp. 2d 283, 286 (E.D.N.Y. 2004) (Hurley, J.) (citations omitted). A court

must not dismiss a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

## I.    <u>Subject Matter Jurisdiction</u>

Defendants contend that this Court lacks diversity jurisdiction over this action. The requirements of 28 U.S.C. § 1332 are met here, namely, that there is complete diversity of citizenship between the parties – plaintiffs are Italian nationals and defendants are United States citizens – and plaintiffs allege the requisite amount in controversy.[3] Thus, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.[4] The Court exercises supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiffs' state law claims.

---

[3] On December 13, 2004, plaintiffs filed a Notice of Dismissal pursuant to Fed. R. Civ. P. 41(a)(1) dismissing defendants Salvatore Conte and Annamaria Persico from the case. The Notice, which this Court "So Ordered," stated that although at the time they filed the complaint plaintiffs believed those two defendants not to be domiciliaries of Italy, plaintiffs now believe that Conte and Persico are domiciliaries of that country and would destroy diversity of citizenship given that plaintiffs are citizens of Italy. Defendants now argue that the dismissal of Salvatore Conte was improper under Fed. R. Civ. P. 19 because he is an indispensable party. <u>See</u> Def. Reply Mem. at 3-11. Defendants do not, however, move for dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party under Rule 19. Thus, contrary to defendants' assertion, this case is not analogous to <u>Random House, Inc. v. Gemini Star Prods., Ltd.</u>, 1995 WL 234736, at *1 (S.D.N.Y. April 20, 1995), and <u>Ing. Hoschek Autoverleich Ges. M.B.H. v. Balag, Ltd.</u>, 1994 WL 701989, at *1 (S.D.N.Y. Dec. 14, 1994), where defendants relied upon Rule 12(b)(7) as a ground for dismissal. Defendants have failed to comply with Fed. R. Civ. P. 7(b)(1), which requires a party making a motion to "state with particularity the grounds therefor, and [to] set forth the relief or order sought." Nevertheless, defendants have the opportunity under Rules 12(g) and h(2) to move for dismissal pursuant to Rule 12(b)(7) based on failure to join an indispensable party under Rule 19 if they choose to do so.

[4] In light of the Court's finding that diversity jurisdiction exists, it does not reach defendants' argument that this Court has no federal question subject matter jurisdiction over plaintiffs' complaint. <u>See</u> Def. Mem. at 7.

## II.    Lanham Act Claim Pursuant to § 1125 (Count XI)

Plaintiffs assert a cause of action under section 1125 of the Lanham Act alleging that "defendants' fraudulent representations of material facts, their omission by concealment of material facts, and their false commercial advertising and promotions misrepresenting the Fractionated Stereotactic Radiosurgery treatment was likely to, and did, cause the plaintiffs and the public at large to approve and subsequently pay good and valuable consideration for the Fractionated Stereotactic Radiosurgery services." Compl. ¶ 253.

Section 1125(a) of the Lanham Act provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Defendants argue that plaintiffs lack standing to pursue that claim in light of Colligan v. Activities Club of N.Y., Ltd., 442 F.2d 686 (2d Cir. 1971).  That case involved a class action brought by school children, through their parents and next friends, based on false descriptions and representations made by defendant ski tour company.  In considering standing to sue in view of the congressional intent behind the Act, the Court held that its purpose "is exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct."  Id. at 692.  Moreover, the Court declined to find

that in enacting the Lanham Act, Congress intended to "create a whole new body of substantive law [concerning consumer protection] completely outside the substantive scope of unfair competition" which would "lead to a veritable flood of claims brought in already overtaxed federal district courts, while adequate private remedies for consumer protection, which to date have been left almost exclusively to the States, are readily at hand." Id. at 693. Based on those findings, the Court held that plaintiffs, as consumers, did not have standing to sue under the Lanham Act and affirmed the district court's dismissal of the suit. Id. at 694. That ruling has been followed consistently by other courts in the circuit. See Berni v. Int'l Gourmet Restaurants of Am., Inc., 838 F.2d 642, 648 (2d Cir. 1988) (actions under § 1125(a) of the Lanham Act are restricted to a commercial class of plaintiffs); PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 124-25 (2d Cir. 1984) (citing Colligan for the proposition that consumers do not have standing to sue under the Lanham Act, and holding that plaintiffs, corporations that produced, acquired, and licensed rights to master recordings of musical performances, had standing to sue manufacturers of music records given stipulation that plaintiffs had royalty interests in particular recordings marketed by defendants); Model Imperial Supply Co., Inc. v. Westwind Cosmetics, Inc., 808 F. Supp. 943, 945 (E.D.N.Y. 1992) (citing Colligan and noting that despite "broad language" of § 1125(a), courts restrict standing to commercial parties under the Act). Cf. Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001) (a plaintiff must be a competitor of the defendant and allege a competitive injury to having standing under the Lanham Act).

Plaintiffs in this case concede that under the Colligan ruling, they, as consumers, do not have standing to sue defendants. Pl. Opp. at 37. They urge this Court, however,

to create an exception to the bar against consumer standing "where the false advertising is especially reprehensible and patients['] lives are placed in imminent jeopardy as a result." Id. at 38. Specifically, they advocate adopting a literal reading of the phrase "any person" in § 1125(a)(1), which creates a civil action under the Act, a position which the Colligan court expressly rejected. See 442 F.2d at 689. Plaintiffs cite no authority for their position, except to argue that the approach adopted in Colligan is criticized by Thorn v. Reliance Van Co., Inc., 736 F.2d 929 (3d Cir. 1984). In Thorn, the Court considered whether an individual investor had standing to sue on behalf of the corporation of which he was a shareholder and executive and for individual injury for false advertising under the Lanham Act. Specifically, the Court analyzed whether the plain meaning of the statute authorized suit by non-competitors as distinct from competitors, traditional false advertising plaintiffs. Id. at 931. In reviewing authority on this issue, the Court rejected the Second Circuit's analysis in Colligan as contrary to the plain meaning rule of statutory interpretation and held that one need not be a competitor to bring a false advertising claim under § 1125(a). Id. at 932-33. Thus, the fact that the Colligan and Thorn courts adopted divergent analyses must be viewed in light of the different aspects of standing presented to those courts. Because Colligan is binding on this Court and this case presents the precise legal issue involved in that case, namely, whether consumers have standing to sue under the Lanham Act, the Court is compelled to conclude that plaintiffs, as consumers, do not have standing to sue. Accordingly, Count Eleven of the complaint is dismissed.

## III.    RICO Claim (Count XII)

Plaintiffs assert a cause of action against defendants under 18 U.S.C. §§ 1962(b),

(c).  Subsection (b) makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  Subsection (c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Plaintiffs bring their action pursuant to § 1964(c), which provides:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court...."  Plaintiffs claim that the "racketeering activity" consisted of fraudulent representations over the Internet and telephone wires and the mail and false advertising practices.  Compl. ¶ 138.

In order to establish standing to sue under § 1964(c), a plaintiff must demonstrate: (1) a violation of substantive RICO, i.e., § 1962; (2) injury to business or property; and (3) that the injury was caused by the violation.  See Gause v. Morris, 2000 WL 34016343, at *3 (E.D.N.Y. Aug. 8, 2000) (Seybert, J.) (citation omitted).[5] Defendants argue that plaintiffs lack standing because they allege only personal injuries

---

[5]  Standing is a requirement of the plaintiff at the RICO pleading stage.  "To state a claim for damages under RICO a plaintiff has two pleading burdens....  First, the plaintiff must assert that the defendant has violated 18 U.S.C. § 1962, the substantive RICO statute.  Specifically, it must be alleged:  (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.  The plaintiff's second 'pleading burden' is to allege that he was 'injured in his business or property by reason of a violation of section 1962.'"  Town of W. Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990) (citations and quotations omitted) (emphasis in original).

that do not constitute injury to property or business within the meaning of § 1964(c). Def. Mem. at 11. In opposition, plaintiffs argue that they were injured in their business or property by virtue of defendants having extracted $17,500 from each plaintiff in advance of entry into the treatment program. Pl. Opp. at 15.

"The requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage." Bankers Trust Co. v. Rhoades, 741 F.2d 511, 515 (2d Cir. 1984), vacated on other grounds, 473 U.S. 922 (1985). In that case, the Court explained what is meant by "proprietary type of damage" as follows: "For example, a person physically injured in a fire whose origin was arson is not given a right to recover for his personal injuries; damage to his business or his building is the type of injury for which § 1964(c) permits suit." 741 F.2d at 515. The Second Circuit has adopted a narrow reading of this requirement. Town of W. Hartford v. Operation Rescue, 915 F.2d 92 (2d Cir. 1990), involved claims of RICO violations by plaintiff town against anti-abortion protestors for allegedly preventing the abortion center from performing abortions by extortion and harassment of clinic clients. The Second Circuit dismissed the RICO claim, holding that plaintiffs failed to adequately allege "injury to business or property" by alleging that defendants' conduct diverted police activities in the town, the town incurred increased manpower and equipment costs in responding to the illegal activities, and one police officer was physically injured in responding to the protests. Id. at 103-4.

In this complaint, plaintiffs allege that the corporate and individual defendants were part of an enterprise in fact under § 1961(4), which engaged in a pattern of racketeering activity from 2001 to 2003 including misdemeanors under New York law

and mail and wire fraud under federal law. Compl. ¶¶ 257-58. Defendants are alleged to have committed mail and wire fraud by engaging in false advertising and misrepresentation via the Internet directed to the plaintiffs in Italy. Id. ¶ 260. Specifically, those advertisements about the Fractionated Stereotactic Radiosurgery service (as described above in the facts section) instructed individuals to call Conte, who held himself out to be an oncologist, and who was not even a medical doctor. Additionally, defendant Gelmi-Nourbaha called plaintiffs and provided them with instructions about traveling to the United States. Id. Defendants also advertised on television and had group meetings with plaintiffs. Finally, defendants mailed letters of acceptance to plaintiffs in Italy. Id. Plaintiffs allege that those acts caused their "injuries and deaths." Id. Additionally, they allege that defendants' conduct "caused the plaintiffs to sustain injuries and damages apart from the cost paid to the defendants, including bodily and psychological injuries; loss of the opportunity to receive appropriate treatment in Italy or elsewhere increasing the probability of length of survival with a greater quality of life; loss of the opportunity to receive systematic palliative care in Italy or elsewhere; pain and suffering; wrongful death; and loss of consortium." Id. ¶ 366. See also id. ¶ 139.

Plaintiffs' allegations are personal in nature, notwithstanding their incidental economic loss of $17,500 as payment for defendants' service. In analogous cases, courts routinely dismiss RICO claims in which plaintiffs allege personal injury as a result of alleged RICO violations. For example, in Gause, 2000 WL 34016343, at *1, plaintiff brought a RICO claim against a tobacco company alleging that she suffered "economical injuries due to smoking related disease and illness," including loss of employment and

loss of income.  The court held that plaintiff alleged merely personal injuries and that loss of income due to an inability to work was not a loss of property sufficient to maintain a RICO claim.  Significantly, the court noted that allegations of a financial loss incidental to a personal injury such as loss of earnings or pain and suffering are not considered injury to property or business.  Id. at *4 (citing Doe v. Roe, 958 F.2d 763, 770 (7th Cir. 1992)).  The court dismissed the claim for lack of standing.  See also Le Paw v. Bat Indus. P.L.C., 1997 WL 242132, at *2 (E.D.N.Y. Mar. 6, 1997) (Gleeson, J.) (dismissing RICO claim against tobacco company where core injury alleged by plaintiffs was physical injury resulting from addiction, despite allegations that they only sought recovery on those claims for expenses incurred in purchasing cigarettes).  Accordingly, because plaintiffs fail to adequately allege injury to their business or property pursuant to § 1964(c), the Court dismisses the RICO claim in Count XII.

## IV.    **Fraud (Count II)**

In Count II of the complaint, plaintiffs assert a cause of action for common law fraud, alleging that from 2002 to 2003 defendants made various intentional and knowing misrepresentations regarding the FSR treatment, such as its success rate generally (for example, that it had "tremendous results"), and in particular for those who had exhausted other treatment options.  See Compl. ¶¶ 151-54.  Additionally, plaintiffs claim that defendants intentionally misrepresented Conte as a medical doctor and oncologist.  Id. ¶¶ 157-58.  Plaintiffs allege that they reasonably relied on those representations and were induced to leave Italy and undergo treatments by defendants.  Id. ¶ 161.

Defendants argue that plaintiffs' fraud claim should be dismissed because

plaintiffs do not plead that claim separate and apart from their medical malpractice claim. See Def. Mem. at 16-19. "The rule is well established that concealment by a physician or failure to disclose his own malpractice does not give rise to a cause of action in fraud or deceit separate from the customary malpractice action. It is only when the alleged fraud occurs separately from and subsequent to the malpractice that a plaintiff is entitled to allege and prove a cause of action for intentional tort and then only where the fraud claim gives rise to damages separate and distinct from those flowing from the malpractice." Coopersmith v. Gold, 172 A.D.2d 982, 984 (3d Dep't 1991) (citations omitted). In Simcuski v. Saeli, 44 N.Y.2d 442, 451-52 (1978), the Court held that the defendant was estopped to plead the statute of limitations as a bar to the plaintiff's malpractice claim when she was induced to refrain from filing timely by the defendant's post-operative fraud, misrepresentation and deception. In the course of the opinion, the Court recognized and approved the "cases which hold that, without more, concealment by a physician or failure to disclose his own malpractice does not give rise to a cause of action in fraud or deceit separate and different from the customary malpractice action...." Id. at 452. The "rule" applied in Coopersmith and recognized and approved in Simcuski is the rule plainly applicable to this complaint.

The Court finds that plaintiffs' fraud allegations on the whole are sufficiently distinct from their allegations of medical malpractice. Plaintiffs' fraud allegations are that defendants intentionally misrepresented the success rate of FSR repeatedly in both materials advertising the treatment and directly to the plaintiffs at conferences. Plaintiffs allege that in reliance on these representations, they were induced to seek treatment in the United States and to forego other treatment. While there is at least one

allegation common to the two claims, for example, that Conte misrepresented himself as a medical doctor and oncologist, <u>see</u> Compl. ¶¶ 155, 212, plaintiffs' fraud claim does not rest merely on "concealment by a physician or failure to disclose his own malpractice." <u>See</u> <u>Coopersmith</u>, 172 A.D.2d at 984. Moreover, as in <u>Spinosa v. Weinstein</u>, 168 A.D.2d 32, 42 (2d Dep't 1991), plaintiffs' allegation that defendants failed to obtain informed consent from them advising them of "benefits, risks, and alternatives" to FSR is distinct from a fraud claim for intentional misrepresentation. Compl. ¶ 219.

Notwithstanding the sufficiency of those allegations, plaintiffs fail to sufficiently allege a distinct injury flowing from the fraud. In connection with their medical malpractice cause of action plaintiffs allege serious physical injuries and death. <u>Id.</u> ¶¶ 224-32. Plaintiffs' contention, <u>see</u> Pl. Opp. at 24, that the separate injury underlying their fraud claim is the $17,500 defendants induced them to pay for the treatment is belied by the complaint in which they allege that in reliance on defendants' misrepresentations they were "enticed to leave Italy and undergo treatment by the defendants in Staten Island, but the majority of patients treated, including the deceased plaintiffs, died shortly after the treatment, sometimes within weeks, sometimes within months." Compl. ¶ 85. They further allege that as a result of defendants' fraudulent misrepresentations, plaintiffs sustained "bodily and psychological injuries; loss of the opportunity to receive appropriate treatment in Italy or elsewhere increasing the probability of length of survival with a greater quality of life; loss of the opportunity to receive systematic palliative care in Italy or elsewhere; pain and suffering; wrongful death; and loss of consortium." <u>Id.</u> ¶ 162. Because plaintiffs fail to allege an injury resulting from the alleged fraud apart from the injury they suffered as a result of

defendants' malpractice, their fraud claim is dismissed.  See Luciano v. Levine, 232 A.D.2d 378, 379 (2d Dep't 1996) (dismissing fraud claim based on representations that plastic surgery treatments were safe where plaintiff did not allege a distinct injury other than that underlying the medical malpractice claim); Spinosa, 168 A.D.2d at 41-42 (holding that while negligence claim alleging defendant podiatrist's failure to obtain plaintiff's informed consent for surgery was distinct from fraud claim alleging that defendant promised plaintiff the operations he performed would "give her beautiful feet," injuries alleged were the same under both theories and dismissing fraud claim).[6]

## V.    Negligent Misrepresentation (Count V)

Plaintiffs assert a cause of action for negligent misrepresentation in Count V of the complaint.  As with plaintiffs' fraud claim, the negligent misrepresentation claim must be based on allegations separate and distinct from the medical malpractice claim.  See Bellera v. Handler, 284 A.D.2d 488, 490 (2d Dep't 2001); McClurg v. State, 204 A.D.2d 999, 1000 (4th Dep't 1994) (affirming dismissal of negligent misrepresentation claim that was based on same misconduct underlying medical malpractice claim).  Here, plaintiffs' negligent misrepresentation claim is inextricably linked to the defendants' medical malpractice.  They allege that "defendants were careless, reckless, and otherwise grossly and wantonly negligent in failing to take reasonable care by not conducting a simple review to determine whether the representations made in their marketing media devices were accurate, knowing full well that the claims were made for

---

[6] The Court declines to reach the other grounds for dismissal advanced by defendants, namely, that plaintiffs failed to plead their fraud cause of action with particularity as against each defendant and that plaintiffs are precluded from seeking compensatory and punitive damages under the rule limiting recovery for fraud to pecuniary losses.  See Def. Mem. at 20-22.

the benefit and purpose of inducing other persons, including the plaintiffs, to rely thereon." Compl. ¶ 186.  Moreover, plaintiffs fail to allege an injury apart from the injury flowing from the alleged medical malpractice.  Compare id. ¶ 187 with id. ¶ 233 (seeking compensatory damages and punitive damages for injury and death). Accordingly, plaintiffs' claim for negligent misrepresentation in Count V is dismissed.

## VI.   Unjust Enrichment (Count III)

Plaintiffs assert a cause of action for unjust enrichment in which they allege that they paid defendants $17,500 to enter the treatment program.  Compl. ¶ 165.[7]  Further, plaintiffs allege that the hospital defendants were unjustly enriched by receiving gross annual fees between $5,000,000 and $10,000,000 beginning in 2001 for radio therapy, including stereotactic body radiosurgery.  Id. ¶ 175.  Finally, plaintiffs seek compensatory damages of at least $10,000,000 and punitive damages.  Id. ¶ 176.

Defendants move to dismiss plaintiffs' claim for failure to state a cause of action upon which relief can be granted.  Def. Mem. at 23-24.  In order to state a claim for unjust enrichment, a plaintiff must allege "that the defendant was enriched, that such enrichment was at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money or property to plaintiff."  Steinmetz v. Toyota Motor Credit Corp., 963 F. Supp. 1294, 1307 (E.D.N.Y. 1997) (citations and internal quotations omitted).  Defendants cite N.Y. Central Mutual Fire Insurance Co. v. 563 Grand Med., P.C., 2004 WL 2008605, at *1 (N.Y. Sup. Ct. Aug.

---

[7] Of that amount, plaintiffs paid a 10% fee ($1,750) directly to Salvatore Conte's personal banking account by wire transfer and wired the balance of the charge to SIUH in New York.  Compl. ¶¶ 165-70. Plaintiffs wired a separate sum (20% of the "overall fee") directly to defendant Lederman pursuant to defendants' instructions.  Id. ¶¶ 171-73.

23, 2004), in which plaintiff, an insurance provider, sued professional corporations owned by medical doctors who provided acupuncture treatment to persons insured under plaintiff's policies. The complaint sought refunds for payments plaintiff made for services provided by the acupuncturists based on the theory that defendants unlawfully employed the acupuncturists. <u>Id.</u> The court dismissed plaintiff's unjust enrichment claim because "defendants rendered services, billed for those services and were paid for the services rendered." <u>Id.</u> at *5.

In this case, plaintiffs adequately allege that they conferred a benefit on defendants by paying them the $17,500 fee for the radiostatic surgery. As in <u>563 Grand Med., P.C.</u>, however, the defendants rendered the service for which plaintiffs paid. "In general, New York courts are reluctant to require the return of sums previously paid...." <u>Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.</u>, 196 F. Supp. 2d 378, 387 (S.D.N.Y. 2002) (dismissing unjust enrichment counterclaim for benefits paid by insurance company for acupuncture services provided by plaintiff because "while [t]he law may at times refuse to aid a wrongdoer in getting that which good conscience permits him to receive[,] it will not for that reason aid another in taking away from him that which good conscience entitles him to retain"). Moreover, as with plaintiffs' claims for fraud and negligent misrepresentation, their cause of action for unjust enrichment is encompassed by their allegations of medical malpractice. <u>See</u> <u>Karlin v. IVF America, Inc.</u>, 239 A.D.2d 560, 562 (2d Dep't 1997) (affirming dismissal of unjust enrichment claim that was "merely [a] reformulation[]" of the cause of action to recover damages for medical malpractice). Consequently, the court finds that equity does not compel restitution to plaintiffs of the fee paid and thus this claim is dismissed.

## VII.  Breach of Warranty (Count VI)

Plaintiffs assert a cause of action for breach of warranty in which they allege: "The defendants, retained by the plaintiffs in reliance on the defendants' representations for the predominant purpose of rendering services, to wit, Fractionated Stereotactic Radiosurgery, breached their express and/or implied warranties to cure or control cancer, thereby making the defendants strictly liable to the plaintiffs."  Compl. ¶ 189.  In moving to dismiss this claim, defendants correctly assert, see Def. Mem. at 24, that New York law does not recognize a cause of action for breach of warranty based on the provision of personal services such as medical treatment.  See Sala v. Tomlinson, 73 A.D.2d 724, 725 (3d Dep't 1979) (affirming dismissal of breach of warranty claim against physicians and hospital alleging that defendants warranted to plaintiffs that sterilization procedure performed "was a completely effective means of preventing conception").  An exception to that rule is where there is a special contract under which defendant physician promises to effect a cure or reach some specific result.  In Robins v. Finestone, 308 N.Y. 543, 545 (1955), the New York Court of Appeals reversed the dismissal of a breach of warranty claim where plaintiff gave consideration for defendant physician's services in performing a special operation on a medical condition.  "Defendant agreed, as his part of the contract, to perform the operation in a good and workmanlike manner and promised to cure the plaintiff by removing the growth by the method indicated and, as part of the contract, promised that plaintiff would be cured in one or two days, could leave the hospital in that time and could immediately resume his occupation."  Id. at 545 (emphasis added).  The court held that plaintiff properly brought an action for breach of contract given the special agreement between the parties, which defendant allegedly

breached injuring plaintiff.  Id. at 545-46.

Unlike in Robins, plaintiffs here do not allege the existence of a special contract pursuant to which defendants warranted they would cure plaintiffs.  In the absence of such an agreement, plaintiffs' claim for breach of warranty based on the medical treatment they received must be dismissed.  See Dobisky v. Rand, 248 A.D.2d 903, 905 (3d Dep't 1998); Owen v. Appelbaum, 205 A.D.2d 976, 978 (3d Dep't 1994); Monroe v. Long Island Coll. Hosp., 84 A.D.2d 576 (2d Dep't 1981); Verra v. Koluksuz, 74 A.D.2d 932, 932-33 (3d Dep't 1980).

## VIII.  New York State Public Health Law § 2805-d (Count VIII)

In Count VIII of the complaint, plaintiffs assert a cause of action for lack of informed consent under New York Public Health Law § 2805-d(1), which provides:

> Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.

Plaintiffs allege that "the defendants" failed to disclose to plaintiffs the "reasonably foreseeable benefits, risks and alternatives" of FSR as reasonable physicians acting under the circumstances would have done and that had they revealed the information, plaintiffs could have made an informed choice about whether to consent to the treatment.  Compl. ¶¶ 235-36.  Moreover, they allege that they relied upon misrepresentations by defendants and could therefore not make informed choices regarding the treatment.  Id. ¶ 241.  The lack of informed consent proximately caused plaintiffs' injuries, including aggravation of their illnesses and loss of opportunity to seek alternative treatment.  Id. ¶ 242.

The hospital defendants move to dismiss this claim arguing that § 2805-d(1) applies only to health care providers that treated or diagnosed plaintiffs, rather than to hospitals or persons who did not treat plaintiffs such as hospital administrators. Def. Mem. at 25. The text of § 2805-d(1) indicates that it applies to the "person providing the professional treatment or diagnosis" and "practitioner[s]." Here, defendants Lederman, Silverman and Grosman are alleged to have "attended [] patients, including the plaintiffs" and "rendered medical services to patients, including the plaintiffs." Compl. ¶¶ 206-11. By contrast, the moving defendants are not alleged to have treated plaintiffs' illnesses. Case law teaches that hospitals are not subject to direct liability for violations of § 2805-d. Nevertheless, a hospital may be subject to secondary liability under § 2805-d where a medical practitioner it employs provides medical treatment without obtaining informed consent from the patient; conversely, courts hold that a hospital is not liable for the failure of a physician it does not employ to obtain informed consent. See Cirella v. Cent. Gen. Hosp., 217 A.D.2d 680, 681 (2d Dep't 1995) (hospital not liable for non-employee physician's failure to obtain informed consent); Culkin v. Nassau Hosp. Ass'n, Inc., 143 A.D.2d 973, 974 (2d Dep't 1988) (complaint failed to state cause of action for lack of informed consent against hospital where it alleged no facts from which an employment relationship could be inferred between treating physician and hospital); Brandon v. Karp, 112 A.D.2d 490, 491 (3d Dep't 1985) (hospital not liable where physician who operated on plaintiff was not its employee or using an instrument that belonged to the hospital); Hill v. Seward, 122, Misc. 2d 375, 376 (N.Y. Sup. 1983) (hospital was not liable for lack of informed consent where surgery was performed by a non-employee). In this case, plaintiffs allege that Lederman, Silverman and Grosman

were each an "employee, servant, [or] agent" of SIUH, North Shore LIJ and North Shore Health System.  See Compl. ¶¶ 5-7.  Accordingly, the complaint states a basis for vicarious liability against the hospital defendants.  That plaintiffs do not plead respondeat superior liability against the hospitals and administrators is not fatal to the sufficiency of this claim.  See Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 711, 712 & n.4 (2d Cir. 1980) (with respect to the doctrine of respondeat superior liability, "a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory … supporting the claim").  The Court denies defendants' motion to dismiss this claim.

## IX.    Failure to Effect Service of Process

Defendants Americo Varone, Joseph R. Pisani and Dale Tait move for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(4) on the ground that plaintiffs failed to properly serve them.[8]  Plaintiffs filed the complaint on August 27, 2004.  According to Fed. R. Civ. P. 4(m), plaintiffs were required to serve defendants by December 27, 2004, which is 120 days after they filed the complaint.  Def. Mem. at 24.  Plaintiffs do not dispute that they failed to timely serve Varone, Pisani and Tait.  See Pl. Opp. at 33. Accordingly, the Court dismisses the complaint against Varone, Pisani and Tait without prejudice.

## X.    Motion to Strike Portions of the Complaint

Defendants move to strike paragraphs 134(a) - (d) and 361(a) - (d)[9] of the

---

[8]  Defendant Andrew Passeri also moved to dismiss for plaintiffs' failure to serve him.  On November 2, 2004, plaintiffs served Passeri.  Thus, defendants' motion to dismiss Passeri is denied.
[9]  Because these two paragraphs are identical, the Court will cite only paragraph 134 in the discussion that follows.

complaint pursuant to Fed. R. Civ. P. 12(f),[10] which provides: "Upon motion made by a party before responding to a pleading ... the court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." The Second Circuit has cautioned that a motion to strike should not be granted "unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). "Resolution of a Rule 12(f) motion is left to the district court's discretion." E.E.O.C. v. Bay Ridge Toyota, Inc., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004) (Glasser, J.).

Defendants argue that the allegations contained in paragraphs 134 and 361 are prejudicial to them, inflammatory, have no bearing on the subject matter of the action and would be inadmissible at trial. See Def. Mem. at 29. In opposition, plaintiffs contend that those allegations "reveal ... unflattering things about" defendants and, while not directly pertinent to defendants' alleged misrepresentations concerning FSR treatment, they are "relevant to a complete exposition of the defendants' fraudulent deceptions." Pl. Opp. at 35.

Paragraph 134 states: "During the period of time from 2001 to 2003 the defendants ... concealed material facts from the plaintiffs and the public at large, including non-disclosure to the plaintiffs: (a) that in 1999 the New York State Attorney General secured an agreement from the defendant SIUH to pay $45 million (plus additional $39 million dollars in free services to indigent patients) to settle a Medicaid fraud case which included among the fraudulent acts the over billing of SIUH patients."

---

[10] Defendants Silverman and Grosman do not move to strike paragraphs 134 and 361 from the complaint pursuant to Fed. R. Civ. P. 12(f). See Notice of Cross-Motion to Dismiss by Silverman and Grosman.

Allegations about a Medicaid fraud case are not relevant to this action. Moreover, courts hold that references in pleadings to agreements with state or federal agencies may properly be stricken on a Rule 12(f) motion. <u>See</u> <u>Shahzad v. H.J. Meyers & Co., Inc.</u>, 1997 WL 47817, at **13-14 (S.D.N.Y. Feb. 6, 1997) (granting motion to strike allegations that brokerage firm entered into consent order with state and federal agencies). Accordingly, section (a) of paragraphs 134 and 361 is stricken from the complaint.

Section (b) states "that since 1996 the Office of the Inspector General of the United States Department of Health and Human Services had been investigating the defendant SIUH for misrepresentations overstating the number of residents on staff studying at SIUH, thereby resulting in an overfunding by the federal government of the hospital's graduate medical education program." Allegations about investigations of misrepresentations regarding the number of SIUH medical residents are irrelevant to this action. Moreover, even if those allegations were relevant, courts hold that references in pleadings to administrative investigations that do not result in adjudication of underlying issues are immaterial and can properly be stricken under Rule 12(f). <u>See</u> <u>Lipsky</u>, 551 F.2d at 893 (granting motion to strike allegations about consent judgment with the SEC and the complaint resulting in that judgment that were not the result of actual adjudication of any issues and could not be used as evidence against another corporation); <u>In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.</u>, 218 F.R.D. 76, 79 (S.D.N.Y. 2003) (granting motion to strike portions of complaint referring to SEC investigations in other litigations involving defendant); <u>Shahzad</u>, 1997 WL 47817, at **13-14 (granting motion to strike allegations that

24

brokerage firm was the subject of disciplinary actions by securities regulators); <u>Ledford v. Rapid-American Corp.</u>, 1988 WL 3428, at **1-2 (S.D.N.Y. Jan. 8, 1988) (striking allegations that the State Division of Human Rights investigated plaintiff's charge of discrimination and made a probable cause determination in favor of plaintiff because those proceedings did not adjudicate issues before the court). <u>Cf.</u> <u>Lewis v. Nissan N. Am., Inc.</u>, 2004 WL 1277999, at *3 (S.D.N.Y. June 9, 2004) (striking allegations regarding plaintiff's complaints to various governmental agencies that defendants misled her with regard a vehicle she purchased from them). Because the allegations in paragraphs 134(b) and 361(b) refer to investigations by the attorney general that did not adjudicate any of the underlying issues before the Court, they are stricken.

Section (c) alleges "that in 2000 the defendants GROSSMAN, LEDERMAN and SIUH were sued for malpractice for unnecessarily administering Fractionated Stereotactic Radiosurgery to a patient (in 2004 the jury awarded $5.5 million for the unnecessary radiosurgery)." Defendants move to dismiss this allegation because the jury verdict against defendants would be inadmissible at trial. Def. Mem. at 31. The Second Circuit cautioned that motions to strike resting on evidentiary decisions at this early stage of the proceedings should be "denied, unless it can be shown that no evidence in support of the allegation would be admissible." <u>Lipsky</u>, 551 F.2d at 893. With respect to this allegation, however, the Court will grant the motion to strike given that its probative value is likely to be outweighed by prejudice to defendants if this case proceeds to trial. <u>See</u> Fed. R. Evid. 403. Section (c) of paragraphs 134 and 361 is stricken from the complaint.

Finally, section (d) alleges "[t]hat in November 2003 the defendant LEDERMAN

entered into an agreement with the New York State Department of Health, which had investigated allegations of professional misconduct in connection with the defendant's treatment of George Harrison, the Beatle, for releasing information about Mr. Harrison, without Mr. Harrison's consent, resulting in a censure and a $5,000.00 fine to the defendant LEDERMAN (notwithstanding the defendants' earlier express and implicit oral representations to the plaintiffs that the Fractionated Stereotactic Radiosurgery had be[e]n chosen by Mr. Harrison, a world famous entertainer, who could afford any treatment, an[y] where, any time)." The Court finds that this allegation should be stricken for the reasons stated above with respect to paragraph 134(a). Moreover, plaintiffs' attempt to manufacture relevance of Mr. Harrison's treatment to this action by alleging that defendants told plaintiffs Harrison received the treatment is unavailing. Plaintiffs allege that the agreement with the New York State Department of Health concerned Lederman's disclosure of confidential information about a patient. That is not the subject of this action. Accordingly, the Court strikes section (d) from paragraphs 134 and 361.

## CONCLUSION

For the reasons stated above, the Court: (1) denies defendants' motion to dismiss for lack of subject matter jurisdiction; (2) dismisses the Lanham Act claim (Count XI); (3) dismisses the RICO claim (Count XII); (4) dismisses the fraud claim (Count II); (5) dismisses the negligent misrepresentation claim (Count V); (6) dismisses the claim for unjust enrichment (Count III); (7) dismisses the claim for breach of warranty (Count VI); (8) denies the motion to dismiss the claim for violation of N.Y. Public Health Law §

2805-d (Count VIII); (9) dismisses the complaint against Varone, Pisani and Tait without prejudice; and (10) grants defendants' motion to strike the allegations in paragraphs 134 and 361 of the complaint.

SO ORDERED.

Dated: May 3, 2005
      Brooklyn, New York

s/_____
I. Leo Glasser
United States District Judge

Copies of the foregoing were sent on this day to:


Jonathan B. Behrins
Behrins & Behrins, P.C.
One Edgewater Plaza (Suite 700)
Staten Island, New York 10305


Anthony Sola
Martin Clearwater & Bell LLP
220 East 42nd Street
New York, NY 10017


Anthony Albert Lenza, Jr.
Amabile & Erman PC
1000 South Avenue
Staten Island, NY 10314


Martin B. Adams
Kopff, Nardelli and Dopf, LLP
440 9th Avenue
New York, NY 10001