UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
GARY D. GOTLIN, as Public Administrator of
the State of New York, in and for the County
of Richmond, in his capacity as Administrator
of the Estate of GIUSEPPA CARAMANNA
BONO, deceased, and her surviving Spouse,
GIUSEPPE BONO,                                                    MEMORANDUM AND ORDER
                                                                 04 CV 3736 (ILG)
                              Plaintiffs,

          -against-

GILBERT S. LEDERMAN,.D.,
GILBERT LEDERMAN, M.D., P.C. and
PHILIP JAY SILVERMAN, M.D.,

                              Defendants.
------------------------------------------------------x
GLASSER, United States District Judge:

          Pending before the Court are motions in limine made by the parties as follows:

          By the defendant Silverman:

          1.  Preclude testimony of proposed witnesses Giuseppe Bono, Piera Bono,

Salvatore Bono, Tanya Bono, Salvatore Conte, Carmel Reddington and Michael

Grossbard, M.D.

          2.  Dismiss Giuseppe Bono's claim for loss of consortium if his testimony is

precluded.

          3.  Exclude excerpts from reports of Drs. Harrison and Grossbard and various

bills.

          4.  Exclude pain and suffering testimony by expert witness.

          5.  Exclude evidence of medical malpractice and loss of consortium post July 22,

2002.

          6.  Exclude plaintiffs' expert testimony as to decedent's cause of death.

7. Exclude plaintiffs' expert reliance upon report of Dr. Savaterri.

8. Exclude report of Dr. Savaterri.

<u>By the defendant Lederman</u>:

1. Joins in the foregoing motion in limine.

2. Preclude testimony regarding inducing plaintiff to travel to the United States.

3. Preclude testimony regarding the event involving Dr. Lederman and George Harrison.

The plaintiff's motions are imbedded in his opposition to those motions.

This case is now six years old. It commenced as an action on behalf of 20 Italian Nationals, all of whom succumbed to cancers, against three doctors who treated them, the hospital in which they were treated and various directors, officers and employees of the hospital. The claims asserted were for medical malpractice, negligence, lack of informed consent, consumer fraud, violation of New York General Business Law § § 349-350 and wrongful death. Over the years and through the course of 195 docket entries, the case has dwindled down to one plaintiff and two defendants. Knowledge of the facts will not be assumed nor will they be retold, having been related before. The reader is referred, instead to <u>Gotlin v. Lederman</u>, 616 F. Supp.2d 376 (E.D.N.Y. 2009), and <u>Gotlin v. Lederman</u>, 367 F. Sup.2d 349 (E.D.N.Y. 2005), in each of which the facts were set out more or less extensively.[1]

The motions to preclude the witnesses named, being the most significant for the

---

[1] Other issues raised during the course of this litigation were addressed in <u>Gotlin v. Lederman</u>, 2009 WL 2843380 (E.D.N.Y. 2009); <u>Gotlin v. Lederman</u>, 2007 WL 2088875 (E.D.N.Y. 2007); <u>Gotlin v. Lederman</u>, 2007 WL 1429431 (E.D.N.Y. 2007); <u>Gotlin v. Lederman</u>, 2006 WL 1154817 (E.D.N.Y. 2006).

outcome, if not the survival of this lawsuit, will be addressed first. To put the issue in a nutshell, discovery was closed on March 31, 2007 by Order of Magistrate Judge Mann (Judge Mann), dated May 25, 2006. The names of witnesses plaintiff contemplates calling at trial was not made known to the defendants until listed in the joint pretrial order in December 2009, approximately four months before jury selection and trial were to commence, and more than two years after discovery was closed, hence this motion.

An informed determination of this motion cannot be made without an understanding of the relevant history which precedes it. The May 25th Order referenced above fixed a precise schedule for the stages of discovery, among which were: 2) All parties shall serve Rule 26 Disclosure by June 15, 2006; 3) All parties shall serve responses to limited Requests for Production of Documents . . . by June 30, 2006; 6) Plaintiff to serve Responses to Interrogatories by September 15, 2006; 9) Depositions to be completed by February 15, 2007. . . it is anticipated that approximately seventy (70) witnesses will be deposed; 10) Fact discovery to be completed by March 31, 2007. In addition, a settlement conference was scheduled for April 13, 2007 at 10:00 a.m. Document #58.

In a letter dated April 13, 2007, counsel for defendant Silverman advised Judge Mann that plaintiff did not respond to his request for production of documents; that plaintiff did not make any Rule 26 disclosure; that plaintiff made no response to interrogatories; that plaintiff failed to respond to a Notice to Produce Expert Witness Information; that plaintiff failed to provide authorization to obtain medical records; that no plaintiffs were produced or offered to be produced for their depositions. The letter

concluded with a request that the plaintiff's actions should be dismissed or, alternatively, that plaintiffs be precluded from offering <u>any</u> evidence at trial.  Docket #57.

By letter dated April 16, 2007, after fact discovery was closed, the plaintiffs' counsel requested an extension of the discovery deadline.  Docket #59.

In a comprehensive Report and Recommendation (R&R) embedded in a Memorandum and Order dated May 7th, 2007, Judge Mann concluded that the plaintiffs' request to reopen discovery should be denied.  She noted that all the attorneys representing the various defendants appeared at the scheduled conference on April 13th, but the plaintiffs' attorney did not.  He claimed that he was unaware of the conference notwithstanding that every other attorney was.  "More disturbing," she noted, was his admission "that little, if any discovery had occurred in the eleven months since the Court had adopted the parties' proposed schedule.  Indeed, plaintiffs had not even served their automatic disclosure which was due June 15, 2006.  Nor had they responded to any of the defendant discovery demands.  Not a single deposition had been conducted."  He offered no excuse for failing to make a timely motion to extend discovery before its deadline.  A comprehensive review of the standard reflected in Fed. R. Civ. P. 16(b), namely, that a Court ordered schedule "shall not be modified except upon a showing of good cause" against the background of the flagrant disregard for the Court scheduling Order drove Judge Mann to conclude that his request to extend the discovery deadline should be denied notwithstanding her sensitivity to "the fact that refusing to reopen discovery might be viewed as penalizing plaintiff for the neglect of their attorney."  An objection was filed to that determination and in a Memorandum and Order reported in

2007 WL 2088875 (E.D.N.Y.), this Court rejected the objection and adopted her denial of the more severe sanctions the defendants requested. Document #63. In a subsequent Memorandum and Order dated October 15, 2007, Judge Mann granted the plaintiffs' request to extend the time to serve their expert disclosure attributable to the illness of that expert. Document #56.

A letter dated April 7, 2008, was sent to Judge Mann by defendants seeking an Order that would preclude plaintiffs from introducing expert testimony at trial, as a sanction for failing to comply with their disclosure obligations under Rule 26(a)(2) of the Fed. R. Civ. P. In an Order dated April 23, 2008, Judge Mann noted that plaintiffs' counsel neither responded to the defense motion to preclude nor sought additional time to do so. She went on to write that she "will not detail . . . the history of . . . plaintiffs' dilatory conduct in prosecuting plaintiffs' claims. Suffice it to say, plaintiffs' counsel's latest dereliction is the latest in a pattern of dereliction on his part." If their discovery deficiencies were not cured by April 28, 2008, she wrote, "severe sanctions will be imposed." Docket #110.

At the conclusion of a discovery conference on June 13, 2008, the following notes, handwritten by Judge Mann, appear on Document #125: "for the reasons stated on the record, the Court rules that plaintiffs' counsel, who failed to notice or even request the depositions of the defense experts, has waived plaintiffs' right to take those depositions, which were supposed to conclude by 6/19/08.

"In addition, despite the impending deadline, plaintiffs' counsel has not provided deposition dates to defense counsel, who, in April noticed the depositions of plaintiffs' experts . . . Plaintiffs shall, on pain of sanctions, including a preclusion order, notify the

Court and defense counsel, via ECF by the morning of 6/16/08 of two dates from June 18th through June 26th when those two experts will be produced for depositions . . . ."

In a handwritten note on Document #134, Judge Mann yet again had occasion to write ". . . the plaintiffs' counsel is directed to show cause, in writing, via ECF, by 7/7/08, why sanctions should not be imposed on him for ignoring yet another Court order . . . of 5/1/08."

On August 4 and 5, 2009, letter motions were filed by defendants Lederman and Silverman requesting an Order that would preclude the plaintiff from using at trial Italian Medical Records belatedly produced by plaintiff. Characterizing these motions as concerning "the latest in a long series discovery derelictions on the part of plaintiffs' counsel," Judge Mann learned that notwithstanding the fact that plaintiffs' counsel received 571 pages of the plaintiff Caramanna's Italian medical records in or about May 2008, but produced a CD-ROM of those 571 pages, untranslated medical records to the defendants more than a year later, on July 28, 2009. In another comprehensive opinion in which the principles of law informing those motions for preclusion were critically reviewed, Judge Mann was once again driven to conclude that the violation of Rules 26(a) and (e) were neither substantially justified nor harmless and granted the motions to preclude. The Court noted that even if preclusion were not warranted, plaintiffs' counsel could use those records only if the Court reopened expert disclosure and he requested the Court to do so. That request was denied for reasons supported by a precisely applied controlling principles of law. Document #180.

It is against that backdrop that these motions to preclude the witnesses he intended to call at trial who were not disclosed until the impending trial date with a

remarkable indifference to fundamental rules of discovery, is addressed.

Reopening discovery as requested by plaintiffs' counsel as an antidote to sandbagging six years after this case was filed and the rancorous procedurally oblivious manner in which he prosecuted it would be an unpardonable abuse of discretion.

The plaintiffs' opposition to these motions is no less remarkable and staggers the imagination. Document #190, "Combined Opposition to . . . Motion in Limine To Preclude Testimony From Fact Witnesses Not Listed in Rule 26 Response" (Pls. Opp.). His failure to disclose the names of his witnesses is laid at the feet of the defendants because they opposed his application to extend discovery and sought dismissal of the plaintiffs' claims or preclusion of his evidence. Not only did they object to his request for an extension, they did not object to, nor did they appeal from, Judge Mann's denial of their request to preclude all his evidence or dismiss his claims. "In short," he asserts, "the defendants were major participants in bringing about the end of fact discovery, but now seek to capitalize on that result by disingenuously claiming they were denied fact discovery." (Pls. Opp. at 2-3). He also asserts that Judge Mann's R&R of May 7, 2007, Document #63, denying the defendants' request to dismiss the plaintiffs' remaining claims and preclude all evidence offered by the plaintiff is the "law of the case or, perhaps, res judicata." After acknowledging her appreciation of the fact that refusing to reopen discovery might be viewed as penalizing plaintiffs for the neglect of their attorney, but, "If so, that is a result contemplated by Rule 16(b)," Judge Mann wrote. "Moreover, adhering to the discovery deadlines prepared by the parties is far less harsh than the remedies sought by some of the defendants — dismissal of the remaining claims or preclusion of all evidence offered by plaintiffs." (emphasis mine).

The objection to that R&R was then presented to this Court as required by 28 U.S.C. § 636(b)(1)(A) and the recommendation of Judge Mann was adopted as being neither erroneous nor contrary to law and "the objection to it denied as is the cross-motion for sanctions."  Document #66.  In affirming and adopting that R&R, this Court understood the denial of the defendants' request was for the reason that it was fatally overbroad in seeking preclusion of <u>all</u> evidence and to dismiss the remaining claims at that juncture in the litigation would be plainly premature.  To allow the testimony of witnesses identified for the first time more than two and a half years after discovery was closed and after a denial of an application to reopen it, would make the orders closing discovery and keeping it closed a <u>brutum fulmen</u> - an empty noise - a charade.  In opposition too, is the plaintiffs' argument that the defendants never formally and explicitly moved after discovery was closed to preclude any discoverable evidence sought to be introduced thereafter.  In essence, the defendants are faulted for having assumed that the plaintiffs' counsel would understand that the irrevocable closing of discovery meant that evidence that was otherwise discoverable and should have been timely disclosed would not be or attempted to be offered thereafter and that they were not obligated to anticipate his failure or unwillingness to understand that, or disregard yet another Court order.

The resort to and citation of authority to support the principle that a party is obligated, at the inception of a lawsuit to notify his adversary of the names and contact information for "each individual likely to have discoverable information that the disclosing party may use to support his claim."  Fed. R. Civ. P. 26(a)(1)(A).  Such initial disclosure must be made based on information "then reasonably available" to the

disclosing party regardless of whether he has yet to complete his investigation of the case. Fed. R. Civ. P. 26(a)(1)(E). A party is also affirmatively bound to supplement incomplete or incorrect disclosures with later acquired information. The failure to discharge those obligations precludes a party from using the withheld information as evidence at trial. Fed. R. Civ. P. 37(c)(1). Stover v. Northland Group, Inc., 200 WL 196724 at 2*3 (W.D.N.Y. 2007); Design Strategies, Inc. v. Davis, 367 F. Supp.2d 630, 634 (S.D.N.Y. 2005); American Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002). The witnesses so belatedly named were known to and reasonably available to the plaintiff and absent a finding of substantial justification or harmlessness the sanction of preclusion under Rule 37(c)(1) is warranted, albeit discretionary. Judge Mann did not make those findings in her R&R of preclusion.

The Court is particularly troubled by the assertion at page 4 of Pls. Opp. that "The proposed testimony of Carmel Reddington was, indeed, not made known until the JPTO because plaintiffs' counsel found out about her involvement with the Bono's medical malpractice claim only a few weeks before. Her involvement with the dismissed fraud claims for the 20 Italian families was well known, but not her specific involvement as an interpreter and conduit between the Bonos and parts of the Lederman/Silverman FSR treatments."

The credibility of that explanation for the belated disclosure of Carmel Reddington as a contemplated witness may reasonably be questioned. Plaintiffs' counsel represented Ms. Reddington in a suit she brought against Staten Island University Hospital (SIUH), (initially a defendant in this case), alleging age discrimination and retaliatory discharge for whistleblowing activities. The suit was

litigated before this Court and is reported in 373 F. Supp.2d 177 (E.D.N.Y. 2005).
Reddington served, at the request of Lederman and Conte (also a defendant in this case
initially), as an interpreter for twelve families from Italy who were then at SIUH. She
"was besieged with complaints" by those families of inadequate and non-treatment and
abandonment. Paragraphs 18-38 of the complaint in that case. Her whistleblowing
activity was reporting the inadequate treatment the Italian families were receiving at
SIUH from Dr. Lederman. She served as a translator for, and a conduit between the
Italian families and SIUH, its officers and doctors for months. The proffered
explanation for plaintiffs' counsel's belated disclosure in December 2009 of
Reddington's role in this case beggars belief.

Judge Mann's sensitivity to "The fact that refusing to reopen discovery might be
viewed as penalizing plaintiffs for the neglect of their attorney" in a real sense, goes to
the heart of this strand of the motion which is whether Fed. R. Civ. P. 16 (f)(1)©;
37(c)(1)©, (d)(1)(A)(ii), (d)(3), should be obeyed or ignored. This Court is keenly aware
of the significance the determination of this motion holds for the eventual outcome of
this case. Other courts have confronted and addressed a similarly difficult choice.
Perhaps the most frequently cited in this regard is <u>National Hockey League, et al. v.
Metropolitan Hockey Club, Inc.</u>, 427 U.S. 639, 642-43 (1976); <u>reh'g. denied</u>, 429 U.S.
874 (1976), which arose out of the dismissal under Fed. R. Civ. P. 37 of respondent's
antitrust action against the petitioners for failure to timely answer written
interrogatories. The Court of Appeals for the Third Circuit reversed the dismissal,
finding that the district court abused its discretion. The question presented to the
Supreme Court was whether the Court of Appeals was correct. Rule 37 as it then was

although linguistically altered in form, is substantively still the same.  In reversing the

Court of Appeals, the Supreme Court wrote:

> The question, of course, is not whether this Court or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the district court abused its discretion in so doing . . . Certainly the findings contained in the memorandum opinions [of Magistrate Judge Mann] quoted earlier in this opinion are fully supported by the record.  We think that the lenity evidenced in the opinion of the Court of Appeals, while certainly a significant factor in considering the imposition of sanctions under Rule 37, cannot be allowed to wholly supplant other and equally necessary considerations embedded in this Rule.
>
> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order.  It is quite reasonable to conclude that a party who has been subjected to such an order will be duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.
>
> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted by such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that these respondents would faithfully comply with all future discovery orders entered by the District Court in this case.  But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.

The repeated failures to comply with the Court Orders and the Federal Rules of

Civil Procedure frustrated their aim of "expediting the litigation process and of

transforming the sporting trial-by-surprise into a more reasoned search for truth."  <u>Cine</u>

11

<u>Forty-Second Street Theatre Corp., v. Allied Artists Pictures Corp.</u>, 602 F.2d 1062, 1063 (2d Cir. 1979).

Those failures requires the defendants' motions to preclude the testimony of Piera Bono, Salvatore Bono, Tanya Bono, Salvatore Conte and Carmel Reddington, neither of whom were identified by the plaintiff as required by Fed. R. Civ. P. 26 and were not identified until more than two years after discovery was closed be, and they are hereby granted.

Their motions to preclude the testimony of Giuseppe Bono are of the sort which puts Courts to a severe test. He is a plaintiff in this action. To preclude his testimony would be to eviscerate his case. To allow him to testify when interrogatories seeking information necessary for the preparation of the defendants' case have never been answered and his deposition has never been had would reward the plaintiff for flouting the rules and disadvantage the defendants. Good cause for his dereliction has never been shown. Should the rules then be enforced or winked at? If discretion may be appropriately exercised and the rules be invested with flexibility, would discretion be abused if the rules would be kept rigid or be bent? Would it be significant or even controlling if good cause for the failure to observe the rules was shown or was absent? Are the rules to be applied differently as against a party or a non-party? In <u>Farm Construction Services, Inc. v. Fudge</u>, 831 F.2d 18 (1ˢᵗ Cir. 1987), the dominant issue presented to that Court was whether the district court abused its discretion in dismissing a complaint for the appellant's failure to comply with discretionary orders pursuant to Fed. R. Civ. P. 37(a)(2). The appellant argued that even if sanctions were appropriate they should be applied to appellant's counsel and asks the Court to consider

whether dismissing its complaint was "just" because of a failure to produce documents. The Court held that an attempt to impose less severe sanctions is not necessarily required before turning to the sanction of dismissal nor is an evidentiary hearing required to be provided before imposing that sanction. In dismissing the complaint the district court did not abuse its discretion where the appellant has intentionally disregarded orders on repeated occasions. Responding to the appellant's claim that sanctions should have been imposed on counsel rather than the client, the Court, in rejecting that claim, cited <u>Link v. Wabash Railroad Co.</u>, 370 U.S. 626, 633-34 (1962), as follows:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.

<u>535 Broadway Associates v. Commercial Credit Corporation of America</u>, 159 B.R. 403 (S.D.N.Y. 1993) mirrors this case factually. A continuous, inexcusable failure on the part of plaintiff's counsel to comply with repeated discovery obligations and discovery orders prompted a motion to dismiss as a sanction. Judge Sotomayor (as she then was), granted the motion. In doing so, she made reference to <u>National Hockey League</u> cited above and wrote: "The Second Circuit has time and again reaffirmed 'the importance of appropriate sanctions as a necessary means of dealing with a recusant party.' Although the sanction of dismissal is the severest sanction available and should be reserved for rare instances, this circuit's recent decisions have made clear that the era when courts shied away from imposition of the full range of sanctions enumerated in Rule 37,

including dismissal, is a thing of the past." (internal citations omitted.) 159 B.R. at 407. A recitation of the failure to comply with the discovery rules of the Fed. R. Civ. P. and with virtually every discovery deadline ordered by Judge Mann, makes the concluding words of Judge Sotomayor in that case, exquisitely applicable here. "535 Broadway's systematic and unilateral disregard for CMC's Discovery Requests and its contempt of this Court's orders has gravely prejudiced CMC's ability appropriately to litigate this case. This grossly negligent and unprofessional conduct is contrary to our system's basic notions of justice and has resulted in unfair costs and delays to the defendant. CMC's motion to dismiss pursuant to Fed. R. Civ. P. 37(b)(2)© is granted." 159 B.R. at 410.

The Court is aware of <u>Design Strategies v. Davis</u>, 469 F.3d 284 (2d Cir. 2006), in which the Circuit Court announced that a showing of bad faith is not required before preclusion may be ordered pursuant to Rule 37 and made clear that preclusion under that Rule is not mandatory and discretion may be exercised even if there was no substantial justification for failing to disclose and the failure is not harmless. In her Memorandum and Order precluding the Italian Medical Records, Judge Mann discussed the factors to be considered in determining an issue of preclusion. Those factors were: (1) an explanation for the failure to disclose; (2) the importance of the evidence to be precluded; (3) prejudice resulting from preclusion, and (4) the possibility of a continuance. An application of the facts to each of them, led her to conclude that the failure to disclose those records was neither justified nor harmless. As regards the preclusion of Giuseppe Bono, the failure to disclose was not justified and surely he, as a plaintiff, would be prejudiced if his testimony were to be excluded. The same degree of prejudice, I conclude, would not be suffered by the defendants. His claim against them

was for the loss of consortium he suffered attendant upon his wife's death. His testimony could reasonably be anticipated to a large extent. The motion to preclude him from testifying is denied on condition that he is made available for a deposition before the commencement of jury selection and if that is logistically impossible, before he is called to testify and a continuance of not more than two days will be granted for that purpose. It should be understood that his testimony will be limited to his claim for loss of consortium only and it is hereby so ordered.

<u>The George Harrison and Professional Misconduct Charge</u>

The defendant Lederman moved this Court to preclude the plaintiff from making reference to, cross-examining him about or offering any testimony or evidence regarding the incident between George Harrison and his estate and Lederman and regarding two charges of professional misconduct. The Harrison incident involved the events surrounding the signing of a guitar by Harrison, a member of the Beatles. Knowledge of the facts of that incident is assumed. That matter was settled. One of the professional misconduct charges was revealing personally identifiable information obtained in a professional capacity without the prior consent of the patient, which Lederman did not contest and was resolved by a censure and fine. The other was an allegation of filing a false report which Lederman denied. The decision not to contest the first charge was accepted in satisfaction of both in a Consent Agreement and Order. The evidence the plaintiffs would introduce pertaining to those events has no relevance at all to this action for medical malpractice and Rule 401 Fed. R. Ev. precludes it for that reason and if it had even a scintilla of probative value, the prejudice and confusion of the issues it would engender would demand its preclusion. Rule 403 Fed. R. Ev. It was for

that reason that a motion to strike reference to them from the complaint, was granted.  See Gotlin v. Lederman, 367 F. Supp.2d 349 (E.D.N.Y. 2005).  See also Dooley v. Columbia Presbyterian Medical Center, 2009 WL 2381331 (S.D.N.Y.), and cases cited there.  It should be added that neither Fed. R. Ev. 404 nor 608 serve to provide succor to the plaintiff should he intend to evoke them, each, by their plain meaning, being clearly inapplicable.

At a pretrial conference attended by all counsel, the plaintiff submitted for the Court's signature, a subpoena directed to the New York State Department of Health, Office of Professional Misconduct to produce "Certified copies of any and all documents and things pertaining to complaints, investigations and/or resolutions involving" Lederman and Silverman.  The prompt and vigorous objection voiced by defense counsel to that subpoena on the ground that it sought documents pertaining to the Harrison incident regarding which the motion to preclude was pending.  Although Fed. R. Civ. P. 45(c)(3) would suggest that a motion to quash is ordinarily made by the person to whom it is directed, and although the subpoena submitted to the Court provides for its signature by the Clerk or Deputy Clerk of the Court or by the attorney seeking it, the Court declines to authorize it in the exercise of its duty to avoid the undue burden or expense of its recipient which the attorney responsible for issuing and serving it must take reasonable steps to avoid. Fed. R. Civ. P. 45(c)(1).  The documents sought by that subpoena are or should be known by the attorney to be irrelevant and inadmissible allegations of the events to which they pertain having been stricken from the complaint in a prior proceeding in this case.  That ruling aside, the evidence sought by that subpoena can, upon the slightest reflection have no tendency to make any fact of

consequence to this medical malpractice action more or less probable than it would be without that evidence.  Fed. R. Ev. 401.

The Motion to Preclude the Report of Dr. Vincent Savatteri

Dr. Savatteri is not listed as an expert or otherwise on the jointly submitted Pretrial Order.  He will not be called to testify.  He never examined the decedent nor is there any indication that he even knew her.  His report originally prepared in Italian and made available in non-certified translation is based entirely on the Italian Medical Records which were explicitly precluded.  It should require no extended analysis or citation of authority to compel the conclusion that a report which offends the hearsay rule and is doubly infirm in that it is dependent entirely upon records which were precluded should not be received in evidence.  The motion to preclude that report is hereby granted.

The defendants move, in addition, to preclude reference to the contents of that report by Dr. Harrison, the plaintiff's expert.  The plaintiffs assert that their motion should be denied, relying upon Fed. R. Ev. 703.  That reliance, is misplaced.  The applicability of § 702 must be determined before § 703 becomes relevant.  To begin with, a qualified expert may testify to his opinion if (1) his testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.  Dr. Harrison refused to review the Italian records himself.  See Document #180 at p.4.  He was content to base an opinion on the report of a doctor who never saw or treated the decedent, but who himself relied upon the precluded, untranslated, Italian medical records.  The defendants never had an opportunity to evaluate those records and Dr.

Harrison had no way of knowing whether Dr. Savatteri's examination of them was superficial or meticulous. His testimony can hardly be said to be the product of reliable principles or methods nor can his opinion be said to be based on facts or data reasonably relied upon by experts in that particular field. It is also clear that to permit Dr. Harrison to refer to the contents of that report would circumvent and render meaningless the order precluding it. For those reasons and for the additional reason that the gatekeeping function assigned to the Court by <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 79 (1993), would be poorly discharged were the motion to be denied and it will not be. It is hereby granted.

A motion was made to preclude testimony from plaintiffs' expert regarding pain and suffering. The expert witnesses never treated the decedent and their testimony pertaining to the issue of medical malpractice is based entirely upon an examination of medical reports and reports which were not precluded from being received in evidence. The deposition of Dr. Harrison made no mention of pain and suffering nor did the plaintiffs' disclosure of the testimony anticipated to be offered from Dr. Harrison make any mention of pain and suffering. While it may be permissible for Dr. Harrison to testify that in his experience, some pain is an inevitable corollary to the specific treatment modalities that were used, testimony by him as to the degree of pain suffered by the decedent would be speculative and is hereby precluded.

<u>Defendants' Motion to Preclude Bills</u>

The Joint Pretrial Motion submitted by the parties lists as exhibits expected to be offered by the plaintiff, "Various bills rendered in connection with the care of Caramanna by the defendants." A reference is also made to "bill incurred by Giuseppa

Caramanna's cancer treatment and death" in the brief recitation of the expected testimony of Giuseppe Bono.  The motion to preclude is based on the plaintiffs' failure to provide those bills to the defendants as Rule 26(a) required.

At a pretrial conference held on April 23, 2010, three days before jury selection was then scheduled to commence, it was disclosed that the plaintiff provided some bills to the defendants on the night of the 19th of April - four days prior to the conference. The transcript of that conference reveals the following:

> MR. LENZA: . . . We never got any bills since the beginning of this case.  I still don't know which bills he was referring to in his pretrial order.  We did get some bills on Monday night that were exchanged by counsel, so there was a blanket statement of various bills.  We never got them during discovery and that's why – that was that portion of my motion in limine on that ground.
>
> MR. BEHRINS: These are documents that my client recently discovered and got to me and that's why they were submitted.
>
> THE COURT: When you say they were documents that you recently discovered.
>
> MR. BEHRINS: My client recently discovered in Italy.
>
> THE COURT: Your client being who?
>
> MR. BEHRINS: Mr. Buono.
>
> THE COURT: He recently discovered them where?  From where?
>
> MR. BEHRINS: With his possessions, with his belongings, in preparing for the trial, he came across these things.
>
> THE COURT: So, you just made those available to the defendants within the week.
>
> MR. BEHRINS: Yes.

Tr. at 10-11.

Those bills were thus not produced until more than three years after discovery was closed and preclusion of those bills is warranted and it is so ordered.

The Defendants' Motion to Preclude the Testimony of
Dr. Michael Grossbard and Excerpts from His Report

The motion to preclude the testimony of Dr. Grossbard is predicated on the plaintiffs' failure to identify him as a trial witness until December 2009. Unlike the other witnesses belatedly identified who were precluded from testifying, Dr. Grossbard was long ago identified as an expert witness to be called by a former co-defendant in this case, Staten Island University Hospital. As far back as June 13, 2008, Judge Mann, for reasons stated to be on the record then before her, determined that the plaintiff had waived his right to depose the defendants' experts. Document #125. Having forfeited the right to depose them, it does not follow that he also forfeited the right to subpoena him to testify.

The substance of his testimony was annexed as Exhibit #17 to the motion for Summary Judgment filed by the then co-defendants Staten Island University Hospital, et al., Document #153. The defendants cannot, in good grace, claim surprise or that they have been sandbagged. Their motion is denied.

The Defendants' Motion to Preclude Evidence
Regarding Patients Being Fraudulently
Induced to Travel to America

In a Memorandum and Order dated May 21, 2009, the Court granted the defendants' summary judgment motion dismissing the plaintiffs' cause of action claiming that they were fraudulently induced to travel from Italy to the United States by

false representations. Document #168 and reported in 616 F. Supp.2d 376, 390-91 (E.D.N.Y. 2009). The plaintiff opposes the motion for the reason that the preclusion of that testimony would be a "denial of the plaintiff's due process rights." A judicial determination that a plaintiff's claim must be dismissed as a matter of law after a full discussion of the reasons for that conclusion can be challenged for its correctness by appealing to a higher court to reverse it, but standing unchallenged, that determination is not a deprivation of a constitutional right. The motion to preclude testimony pertaining to that claim is granted.

The plaintiff has moved this Court for an order that would preclude the defendant Lederman from introducing into evidence an article titled, "Unresectable Locally Advanced Pancreatic Cancer: A Multimodal Treatment Using Neoadjuvant Chemoradiotherapy . . . and Subsequential Surgical Exploration" which appeared in the Annals of Surgical Oncology. The motion to preclude is granted. Fed. R. Ev. 803(18).

The draft of this Memorandum and Order was completed on Friday, April 30th and was kept over the weekend to be reviewed for typographical errors and grammatical or stylistic changes deemed necessary. During the weekend, in examining the ECF documents not yet filed when I left Chambers after 5:00 p.m. on Friday, I noticed Document #203 and attached exhibits filed on April 30th by the plaintiff, but obviously some time after 5:00 p.m. Document #203 reads as follows: "The following was inadvertently left out of the plaintiffs' April 10th submission: Dismissed defendant SIUH, by its counsel, Martin, Clearwater & Bell, served Rule 26 disclosure on or about June 28, 2006 (Exhibit A), specifying the following as witnesses: Giuseppe Bono, Piera Bono, Tanya Bono, Salvatore Bono. Defendant Silverman, by his counsel, Amabile & Erman,

P.C., served Rule 26 disclosures on or about June 14, 2006 (Exhibit B), <u>specifying</u> 'None other than the parties to this action . . . as <u>witnesses</u>.' (Emphasis added). The foregoing disclosures by the defendants' confirm their cognizance of the surviving spouse and children being likely to have discoverable information to support the decedent's claims, rendering any claim of surprise dubious at best."

This supplemental submission is disingenuous or simply manifests a failure to understand Rule 26. To begin with, the Rule 26 disclosure made by Martin, Clearwater & Bell, was on behalf of defendants who are no longer parties and have long since been terminated. Their disclosure does <u>not</u> as the supplemental submission would have it, specify individuals named <u>as witnesses</u>. Their disclosure tracked the language of Rule 26(a)(1)(A) precisely – it provided to "the other parties" (the plaintiffs), the names of individuals <u>they</u> ("the disclosing party") <u>may</u> use to support its claims or defenses. In this regard, compare Rule 26(a)(3)(A) which provides in relevant part: "In <u>addition</u> to the disclosures required by Rule 26(a)(a) and (2), a party <u>must</u> provide to the other parties and promptly file the following information. . . .(I) The name . . . of each witness – separately identifying those the party expects to present and those it may call if the need arises."

The obvious purpose of Rule 26(a)(1)(A) is to give "the other party" an opportunity to select for deposition the individuals named who, they determine would be important, if not necessary, to support their claims or defenses and thus carefully and competently prepare for trial. By consistently ignoring the Rule and the orders of Judge Mann, the plaintiffs, providing no Rule 26 disclosure and providing the names of no individuals they <u>may</u> use to support their claims until more than two years after

discovery was closed, and only as the trial date was approaching, prevented the "other party" – the defendants, from competently preparing for trial.  In essence, by this supplemental submission, the plaintiff requests the Court to hold that a defendant's compliance with Rule 26(a)(1)(A)(I), gave him immunity to violate it.

SO ORDERED.

Dated:        Brooklyn, New York
              May 3, 2010


_____/S/_____
I. Leo Glasser