UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
GARY D. GOTLIN, et al.,

              Plaintiffs,

                                    MEMORANDUM AND ORDER

  -against                           04 CV 3736 (ILG)

M.D. GILBERT S. LEDERMAN, et al.,

              Defendants.
------------------------------------------------x
GLASSER, United States District Judge:

On the morning of the last day of the trial, counsel for the parties appeared in

Chambers for a conference which resulted in a stipulation that avoided the necessity of

prolonging the trial.  The parties advised that when Court reconvened upon the jury's

return from lunch, all would announce that they rested.  To avoid the necessity of

awaiting that event and of the recess to follow to permit the argument on their motions

pursuant to Rule 50, Fed. R. Civ. P., it was agreed, in the interest of time, that the Court

would, and did, entertain those motions as if made at the end of the entire case.

The motion on behalf of Dr. Lederman was based on the testimony of Dr. Louis

Harrison, the plaintiff's medical expert, that his opinion regarding Mrs. Bono's pain and

suffering was based, in part, on her Italian medical records which were precluded from

being received at trial; on his disavowal of having expressed an opinion on pain and

suffering and on the absence of any evidence whatsoever in the record upon which an

opinion on pain and suffering could be expressed.  Tr. at 360-61.

The motion on behalf of Dr. Silverman was similarly based upon the absence of

any evidence in the record on that issue; on an oblique reference to pain by Dr.

Harrison, *viz.*, "some accidental improvement in pain" (Tr. at 119), bottomed upon an

assumption that Mrs. Bono had pancreatitis, an assumption blatantly unwarranted given his acknowledgment that it was not known what Mrs. Bono had; on the preclusion of the Italian medical records and the inadmissibility of any testimony in reliance upon them.  It was understood that upon the return of the jury, the announcement that both sides have rested will be made in open Court and the parties can then proceed directly to summations.  At the conclusion of the arguments on that motion, the Court reserved decision.  At that conference, discussion was had pertaining to the instructions proposed to be given to the jury and to the proposed action of the Court regarding the parties' request to charge in accordance with Rule 51, Fed. R. Civ. P. (Tr. at 353).  When the jury reconvened, the parties announced that they rested and counsel proceeded to their respective summations.  The Court then charged the jury and they were directed to begin their deliberation.

The need to provide a suitable verdict sheet to assist the jury became apparent when the case was submitted to them for their deliberations.  The plaintiff had submitted a proposed verdict sheet with his requests to charge which was unnecessarily complex, no longer viable in the light of the pretrial rulings which were made and rejected without dissent.  Verdict sheets were not submitted in advance by the defendants with their proposed jury instructions.  The Court, together with counsel, then hastily drafted a verdict sheet which, after several modifications, was typed, circulated among counsel and agreed upon by all as being satisfactory.  That verdict sheet was then sent into the jury room.  The jury arrived at a verdict as reflected on the verdict sheet as annexed hereto.  An examination of it readily reveals that the instruction following the answer to questions "3" and "4" was "if your answer to both is

2

NO - you will go no further." That instruction, followed literally, left the following

questions, more specifically "8" and "9," unanswered and the jury was discharged.

These timely motions followed: (1) the plaintiff moved for an Order pursuant to Fed. R.

Civ. P. 50, 59(a)(1), 59(d) and 59(e), for a new trial solely on the issue of damages for

pain and suffering; (2) the defendant Lederman moved for an Order pursuant to Fed. R.

Civ. P. 50(b) directing the entry of a judgment in his favor on the malpractice issue as a

matter of law; (3) the defendant Silverman has similarly moved and cross-moved for an

Order directing a judgment in his favor as a matter of law pursuant to Fed. R. Civ, 50(a)

and (b).

As has been indicated, decisions were reserved by the Court on the motions made

by the parties pursuant to Rule 50(a) before the case was submitted to the jury and

having been renewed pursuant to Rule 50(b), the motions will now be addressed.

## Discussion

Rule 50(a) provided in relevant part:

> (1)  If a party has been fully heard on an issue during a
> jury trial and the court finds that a reasonable jury would not
> have a legally sufficient evidentiary basis to find for the party
> on that issue, the court may
> (A) resolve the issue against the party; and
> (B) grant a motion as a matter of law against he party
> on a claim . . . that under the controlling law, can be
> maintained . . . only with a favorable finding on that issue.
> (2) A motion for judgement as a matter of law may be
> made at any time before the issue is submitted to the jury.

Rule 50(b) provides in relevant part:

> If the court does not grant a motion for judgment as a
> matter of law made under Rule 50(a) . . . if the motion
> addresses a jury issue not decided by a verdict . . .the movant
> may file a renewed motion for judgment as a matter of law

. . . . In ruling on the renewed motion, the court may:

\*     \*     \*

(3) direct the entry of judgment as a matter of law.

A determination of a motion whether made pursuant to Rule 50(a) or (b) is solely a question of law and guided by the same standard expressed in the oft-cited case of Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir. 1970), as follows: "Simply stated, it is whether the evidence is such that, without weighing credibility of the witnesses, or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached," and in a variety of iterations on that theme: If there is no legally sufficient evidentiary basis for a verdict; If there is such a complete absence of evidence supporting a verdict that the jury's finding could only be the result of surmise and conjecture. See, e.g., Fidelity Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133, 142 (2d Cir. 2008); Galdieri-Ambrosini v. Nat'l. Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998). In Gunning v. Cooley, 281 U.S. 90 (1930), the Supreme Court stated it succinctly thus: "A mere scintilla of evidence is not enough to require the submission of an issue to the jury. The decisions establish a more reasonable rule 'that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'"

With those constraints clearly in mind, the only issue for the court to decide is whether there was any legally sufficient evidence upon which the jury could have returned a verdict of malpractice, giving due deference to the jury's determinations of

4

credibility and making no determination regarding the weight of the evidence. A review of the record compels the conclusion that there was. The testimony of the expert witness, which was unequivocal and undisputed, was that the defendants deviated from good and accepted medical practice in failing to perform their own biopsy on Mrs. Bono before undertaking to treat her with stereotactic radiosurgery. That testimony was:

> A.    Well, the only way to truly confirm the existence of a cancer is by a biopsy, by looking at actual tissue, for a pathologist to look at it and say that's cancer. That's the only confirmation.
>
> Q.    Would it be fair to say that histology is the best way to confirm cancer or to arrive at that diagnosis of cancer?
>
> A.    It's the only way. It's the only way to arrive at an unequivocal diagnosis.
>
> *   *   *
>
> Q.    Doctor, do you have an opinion with a reasonable degree of medical certainty whether Dr. Lederman's and Dr. Silverman's failure to confirm that Giuseppa Bono had cancer before treating with stereotactic radiosurgery was a deviation or departure by Dr. Lederman and Dr. Silverman from the then-existing good and accepted medical practice?
>
> *   *   *
>
> A.    My opinion that that treatment was a deviation from accepted medical practice.

Tr. at 94-95.

That testimony was plainly sufficient to support the jury's verdict on the issue of malpractice and that prong of the defendants' motions must be denied. The jury's verdict that Mrs. Bono's death was not proximately caused by Dr. Lederman and Dr. Silverman is not disputed, nor in the Court's view could it be.

5

## The Defendants' Motion Regarding Pain and Suffering

The foregoing determination related to the wrongful death action brought against the defendant doctors. There was also an action for pain and suffering allegedly caused by them which survived the death of Mrs. Bono.

The defendants have moved for an Order directing a judgment that as a matter of law a reasonable jury would not have a legally sufficient evidentiary basis to find for the plaintiff that her pain and suffering, if any, was caused by Dr. Lederman and Dr. Silverman. A review of the entire record compels the conclusion that this prong of the motion must be granted. There isn't a jot or tittle of legally sufficient evidence to support a verdict that Dr. Lederman or Dr. Silverman caused Mrs. Bono pain or, if she did in fact endure any pain that it was proximately caused by them. Testimony in that regard was elicited from two witnesses - Giuseppe Bono, Mrs. Bono's husband and Dr. Louis Harrison, the plaintiffs' medical expert. Mr. Bono testified that his wife had been experiencing pain after undergoing surgery in Italy and long before she arrived at Staten Island University Hospital (SIUH). He was given Toradol, an analgesic, by the doctors in Italy, with which to inject his wife when she complained of pain. She continued to experience pain after arriving at SIUH and before radiation treatment commenced. Mr. Bono continued to inject her with Toradol in response to her complaints of pain while she remained at SIUH. Tr. at 316-19; 332. His testimony thus unequivocally established that Mrs. Bono's pain was endured by her in Italy and continued to be endured by her after and during her arrival at SIUH and made no mention of causation.

An observation[1] regarding pain was made by Dr. Louis Harrison, the plaintiffs' medical expert during the course of his direct examination. Before alluding to it, references to other portions of his testimony are essential if his observation regarding Mrs. Bono's pain is to be given its due.

As has been noted above, his opinion as to whether Dr. Lederman and Dr. Silverman were guilty of malpractice was based solely upon their failure to perform a biopsy on Mrs. Bono before administering stereotatic radiosurgery, that being the only way "to arrive at an unequivocal diagnosis" of whether she did or did not have pancreatic cancer. Thereafter, the following exchange between Dr. Harrison and plaintiffs' counsel appears.

> Q.    Was Giuseppa Bono's pain reduced by way of the radiation administered at Staten Island University Hospital?
>
> A.    From the record, it does seem that the patient had decreased pain after the treatment.
>
> Q.    Is that any indication to you that it was effective at treating whatever malady she may have been suffering from?
>
> A.    Well, the interesting phenomenon is that sometimes radiation therapy can have an anti-inflammatory effect or an effect on tissue that's inflamed, that's short-lived.
>
> And it could be that in this situation, the radiation therapy did, for a short period of time, help this patient because of that anti-inflammatory effect, if you will.
>
> You would never use radiation therapy for that purpose in someone who didn't have cancer, but that could be an effect that was achieved. So in that way, it could be that the patient derived, you know, some pain relief.

---

[1] The Court characterizes his testimony as an "observation" rather than an "opinion" given his disavowal of an opinion. See, *infra.*

Q.      Doctor, if I told you that Giuseppa Bono's pain was reduced and her energy level was up after being administered certain amounts of stereotactic radiosurgery, is that any indication to you that the intended goal of curing her was achieved?

A.      No. This patient had no – <u>first of all, we don't know what this patient had.  But assuming that this patient had pancreatitis,</u> radiation therapy might cause some accidental improvement in pain, as I just described, but there is just no curative intent when you're treating pancreatitis with radiation therapy.  It's just not done.

Tr. at 118-19 (emphasis added.)

Given his acknowledgment that in the absence of that biopsy, it was not known what Mrs. Bono had, whether she had pancreatic cancer or pancreatitis, he nevertheless was prepared to render the following opinion based on the fact that she did <u>not</u> have cancer.

Q.      Dr. Harrison, do you have an opinion with a reasonable degree of medical certainty, based on the Staten Island University Hospital records, that the administration by Dr. Lederman and Dr. Silverman of stereotactic radiosurgery to Giuseppa Bono at the time when she did <u>not have cancer</u> was a substantial contributing factor or the proximate cause of pain and suffering?

A.      Yes, I do.

Q.      What is that opinion?

A.      That it was a <u>contributor</u>.

Tr. at 112-13 (emphasis added.)

On cross-examination, this excerpt is recorded:

Q.      You looked at notes that are records in Italy, true?

A.      Yes.

Q.      And was that part of the basis of your opinion on pain and

suffering?

> A.   I didn't make an opinion about pain and suffering, but the answer
> would be yes.

Tr. at 144-45 (emphasis added.)

This excerpt is remarkable and significant for three reasons. First, his unambiguous declaration that he did not give an opinion on pain and suffering. Second, and more important, because the plaintiff never made the Italian medical records available to the defendants during the extended eleven month period of discovery, they were precluded from relying on the Italian medical records at trial. Docket #180. Third, his unequivocal denial of any expression of an opinion on pain and suffering leaves the record barren of any reliable causal relationship between that and the radiation therapy. In addition, his acknowledgment that the SIUH record revealed a decrease in pain after radiation would suggest that the decrease was in the pain she arrived with and continued to experience before the radiation began, as testified to by Mrs. Bono's husband. There was not a scintilla of evidence to permit the jury to speculate about how much of her pain was the pain she had upon her arrival from Italy and how much, if any, was "contributed" by her treatment. See Prete v. Rafla-Demetrious, 224 A.D.2d 674 (2d Dep't 1996).

Although the foregoing drives the Court to conclude that the defendants' motion must be granted, that conclusion is also compelled by the Court's instruction to the jury and the complete absence of any evidence that could even remotely respond to that instruction, which was as follows:

> So, if you find that the defendant you are considering is
> negligent, then you must also find that the plaintiffs proof by

a fair preponderance of the evidence was a substantial factor in bringing about the harm to Mrs. Bono, that it was the proximate cause of her harm, that had an effect in causing the harm that reasonable persons would regard as a cause of it. In the context of this case, you must find that the conduct of Dr. Lederman or Dr. Silverman was a substantial factor in bringing about the harm to Mrs. Bono.

Tr. at 424.

It is telling to note that, adverting to the excerpt from pages 112-13 of the transcript, *supra*, Dr. Harrison could not acknowledge that the stereotactic radiosurgery was a <u>substantial</u> contributing factor. He could only bring himself to say that it was a "contributor." And that tepid response was based upon the assumption that Mrs. Bono did not have cancer, a blatant speculation given his acknowledgment of total ignorance of "what this patient had;" and notwithstanding his acknowledgment of the decrease in pain as reflected in the hospital record. In being driven to the conclusion that this prong of the motion must be granted, no regard need be and none was given to witness credibility or weight of evidence because there was not a scintilla of evidence to be weighed and the unwarranted assumptions of Dr. Harrison and his disavowal of any opinion on pain and suffering are plain on the face of them. It can, at best, be said that there are emanations of pain and suffering in the air, but nothing to support their derivation and a jury's verdict on that issue could only be the result of sheer surmise and conjecture.

The determination of this prong of the defendants' motion makes the plaintiff's motion for a new trial moot. Although no judgment regarding pain and suffering was vacated or reversed and therefore Rule 50(c)(1) is literally inapplicable, in the interest of caution a new trial is denied for the reasons given above in granting the defendants'

motion pursuant to Rule 50 (a) and (b).

SO ORDERED.

Dated:        Brooklyn, New York
               July 28, 2010

/s/
I. Leo Glasser

COURT EXHIBIT

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
GARY D. GOTLIN, as Public Administrator of
the State of New York, in and for the County
of Richmond, in his capacity as Administrator
of the Estate of GIUSEPPA CARAMANNA
BONO, deceased, and her surviving Spouse,
GIUSEPPE BONO,

                                                     VERDICT SHEET
                                                     04 CV 3736 (ILG)

                    Plaintiffs,

    -against-

GILBERT S. LEDERMAN, M.D.,
GILBERT LEDERMAN, M.D., P.C. and
PHILIP JAY SILVERMAN, M.D.,

                    Defendants.
-----------------------------------------------------------x

A.  Do you find that the plaintiff has established by a
fair preponderance of the evidence that:

1. Dr. Lederman committed malpractice         Yes **X**     No _____

2. Dr. Silverman committed malpractice      Yes **X**     No _____

    If your answer to both questions is NO you need to go no further.

    If your answer to either Dr. Silverman or Dr. Lederman, or both, is YES, then
    continue --

3. Was Dr. Silverman's malpractice the proximate
cause of Mrs. Bono's death?             Yes _____     No **X**

4. Was Dr. Lederman's malpractice the proximate
cause of Mrs. Bono's death?            Yes _____     No **X**

If your answer to both is NO - you will go no further.

If your answer to either or both question 3 or 4 is YES, then continue --

5. What monetary sum, if any, would compensate
Mr. Bono and Mrs. Bono's children for Mrs. Bono's death?          $ _____

6. What is the monetary sum that could compensate
Mr. Bono for the loss of consortium he suffered as a
result of the loss of Mrs. Bono's services?          $ _____

7. What percentage of the amounts entered above do you assign to:

                          Dr. Lederman         _____%
                          Dr. Silverman        _____%

**The total must equal 100%**

8. Did plaintiff establish by a fair preponderance of the
credible evidence that medical malpractice proximately
caused Mrs. Bono's pain and suffering?

Yes _____          No _____

If your answer to question 8 is YES, then continue --

9. What is the monetary sum you would award for the
pain and suffering, if any?          $ _____

10. What percentage of the amount entered above do you assign to:

Dr. Lederman        _____%
Dr. Silverman       _____%

**The total must equal 100%**

Dated:

Brooklyn, New York
May \_\_\_\_, 2010


_____
FOREPERSON